No. 815

First Circuit

MYERS v. THE NEWPORT CO.

(June 30, 1931. Opinion and Decree.)

C. V. Pattison and E. F. Gayle, of Lake Charles, and C. H. Love, of Oakdale, attorneys for plaintiff, appellant.

Cline, Plauche & Girod, of Lake Charles, attorneys for defendant, appellee.

LeBLANC, J. Ira P. Myers was engaged in the business of blasting trees and stumps, using dynamite in pursuing his work. On January 28, 1930, while blasting on a tract of land from which he had been delivering stumps to the Newport Company, he was killed by a dynamite explosion. His widow instituted this proceeding in her own behalf, as well as for her two minor children, to recover compensation for his death, alleging that he was an employee of the defendant company. The defense is that Myers was not an employee, but an independent contractor, and therefore there was no compensation due. That appears to be the only issue presented.

From a judgment sustaining the defendant's contention and dismissing her demand, the plaintiff has appealed.

Robert Douglas, wood superintendent for the defendant company, testifying as to the relations between his company and the decedent Myers, says that the latter was simply selling them wood. He made his own arrangements for stumpage, and de-

fendant bought the wood from him delivered at its plant at De Quincy, by the ton. Whilst the dynamite and tools used by him came from their supplies, they were bought by him and the amounts charged for them were deducted in the settlements made with him. He furnished his own labor, and they exercised no control whatever over him. He regulated his own hours of employment, and, as far as this witness remembers, had never been instructed as to how many loads he would be allowed to haul per day.

H. L. Smith, superintendent in direct charge of the defendant company's plant, testifies also that Myers' agreement was only to deliver wood to them at the price of $3.50 per ton, and that they had no control whatsoever over his activities in producing the wood. They furnished him the dynamite and tools that he used, but at his own request and expense. At the time he was killed, he was operating on what is referred to as the Davis tract of land in section 25, Township 6, S., R. 11, with which his company had absolutely nothing to do. The company bought wood from quite a number of blasters like Myers, and, in some cases, by special arrangement they protected the landowners for the stumpage by paying them direct. That, however, was not so in the case of Myers with regard to the stumpage on this Davis tract.

In an effort to show that the defendant retained control over the work, counsel for plaintiff submitted testimony to show that in certain cases the company directed the blasters by showing them the lines of the different properties on which they were to work, and at times hired blasters to get the stumps that were bought from the landowners themselves. Even if what the defendant did in those cases was to be considered as maintaining supervision and exercising control over the work, it could avail the plaintiff nothing as the positive testimony we find in the record is to the effect that nothing of this kind was done in the course of operations under their agreement with the decedent Myers.

The determining factor which almost invariably distinguishes an independent contractor from an ordinary employee lies in the degree of supervision and control which the one for whom the work is being performed has in relation to the manner and method in which it is done. The employment of help, the use of tools and supplies, and the method of payment are all elements which also enter into consideration in arriving at the amount of supervision or control that is retained. The generally accepted rule, not only in Louisiana, but in other jurisdictions as well, is to the effect that where the workman performs his service free of any direction or interference on the part of the principal, save as to result only, he is an independent contractor. It would seem besides, that in a case where the workman employs his own labor to help him, and furnishes his own tools and necessary supplies, his status as such is the more emphasized. This rule may be said to have been crystallized into law in Louisiana, by our own Workmen's Compensation Statute, as will be noted from the following provision in paragraph 8 of section 3 of act 85 of 1926:

"The term 'independent contractor' shall be considered to mean, for the purpose of this act, any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or a whole, *under the control of his principal as to results of his work only,*

and not as to the means by which such result is accomplished." (Italics ours.)

In the case of James v. Hillyer-Deutsch-Edwards, reported in 15 La. App. 71, 130 So. 257, we held that this provision in the act of 1926, which was an amendment to the original compensation Act No. 20 of 1914, did nothing more than to give legislative sanction to the existing law and jurisprudence as to who were independent contractors.

Tested by this rule as thus formulated into law, it is clear that the decedent Myers, who, according to his own affidavit, made at the time he entered into an agreement with the defendant, was the owner of the stumps he was going to sell, bought and paid for the tools and dynamite he used, and performed his work in a manner to suit his own convenience, without direction or supervision of any sort by the defendant, and was paid for the stumps at a given price per ton as he delivered them at the mill, was an independent contractor, and not an employee of defendant.

Counsel for plaintiff presents the further issue that Myers, at the time he was killed, was performing manual labor, and, under the definition given to the term "independent contractor" hereinbefore quoted from Act No. 85 of 1926, he must be deemed to be an employee as that definition, it is contended, specifically excludes from the term, all those who do manual work.

Counsel assumes it as a fact that Myers did perform manual labor in his operations as a blaster of stumps. It was not so proven on the trial of the case, but we are willing in order to consider the issue, to let it stand as a fact, and still we are unable to agree with counsel that the Legislature intended to prescribe such a condition in order that a person may come within the meaning and definition of the term "independent contractor." As we said in the recent case of Cobb v. Long Bell Lumber Co., 16 La. App. 297, 134 So. 310, 312, 'If what counsel is contending for be made an unqualified or absolute test, independent contractors would rarely if ever come up for consideration in suits of this character." We venture to assert that it is more frequent than not that an independent contractor is a person who himself performs manual labor of some kind in the work he is engaged in. A brick mason who engages to do the brick work on a building as an independent contractor almost invariably works himself, even though he hires help. So does the painter, the tinsmith, the plumber, and others of that class who render service, "for a specified recompense * * * either as a unit or a whole."

In the way in which counsel would have us apply the meaning of the term, a carpenter who contracts to erect a house at a stipulated price, who makes the plan, furnishes all material, and has entire control over the work in every respect, except as to result, would not be an independent contractor, simply because, in the course of his work, he personally performed most of the manual labor involved in its construction. Such we do not believe was the legislative intention in defining the words, "independent contractor," and we are not ready to so hold.

The judgment of the lower court which rejected plaintiff's suit is correct, and it is now affirmed.